842 A.2d 919

**Frank and Margaret IEROPOLI, Appellants**

v.

**AC&S CORPORATION, National Gypsum Company, Asbestos Corporation, Ltd., Bell Asbestos Mines, Inc., Combustion Engineering Inc., Crown Cork Seal Company, Inc., Flexitallic Gasket Company, Gaf Corporation, Garfield Molding Company, Inc., Garlock, Inc., Hajoca Plumbing Supply Company, Hopeman Brothers, Inc., Meriden Molded Plastics, Metropolitan Life Insurance, Nosroc Corporation, Owens–Illinois, Inc., Peltz Rowley Chemicals Company, Pfizer, Inc., Rapid American Corporation, Bevco Industries, Turner & Newall, Ltd., Union Carbide Corporation, U.S. Gypsum Company, U.S. Mineral Products, W.R. Grace & Company**

**Petition of Crown Cork & Seal Company, Inc.**

Supreme Court of Pennsylvania.

Argued Oct. 22, 2002.

Resubmitted Dec. 23, 2003.

Decided Feb. 20, 2004.

140

Mathieu Jode Shapiro, Paul S. Diamond, Michael J. Stack, Thomas A. Leonard, Philadelphia, for Crown Cork & Seal Co., Inc.

John G. Knorr, III, Harrisburg, for petitioner amicus curiae, Atty. Gen. of PA.

Gregory Barton Abeln, Carlisle, for petitioner amicus curiae Washington Legal Foundation (WLF).

Robert L. Pratter, for petitioner amicus curiae PA Mfrs. Ass'n.

Bernard J. Farris, for petitioner amicus curiae, Local Union 188.

Anthony Casey, for petitioner amicus curiae, Local Union 107.

Richard H. Markowitz, Philadelphia, Richard Matthew Pettigrew, for petitioner amicus curiae, Intern. Ass'n of Machinists & Aerospace Workers'.

Thomas Herman Kohn, Philadelphia, for petitioner amicus curiae, Teamsters Joint Council No. 53's.

Clayton Richard Polley, for Rapid American Corp.

Frank C.B. Friestedt, Philadelphia, for U.S. Mineral Products.

Nathan A. Schachtman, Philadelphia, for Owens-Illinois Inc.

Robert Walter Rowan, Philadelphia, for AC&S, Inc.

Stewart R. Singer, Philadelphia, for Metropolitan Life Ins.

Jennifer Margiotta Davies, for Pfizer, Inc.

James P. Gannon, Media, for W.R. Grace & Co.

Steven J. Cooperstein, for Frank & Margaret Ieropoli.

Irving Steven Levy, for Meriden Molded Plastics.

George B. Bruch, for Peltz Rowley Chemicals and Bevco (Rite House & Packing).

Daniel J. Ryan, Philadelphia, for Hopeman Bros., Inc.

Frederic L. Goldfein, Philadelphia, for Garlick, Inc., Asbestos Corp., Ltd. and Bell Asbestos Mines.

Mark Gerard Lionetti, Philadelphia, for Hajoca Plumbing.

Barbara J. Buba, Philadelphia, for Union Carbide and Nosroc Corp.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Chief Justice CAPPY.

In this appeal, we review the order of the court of common pleas granting summary judgment to Appellee Crown Cork & Seal Company, Inc. ("Crown Cork") pursuant to the newly enacted statute ("Statute") that limits the successor asbestos-related liabilities of certain Pennsylvania corporations. 15 Pa.C.S. § 1929.1.[1] For all the reasons that follow, we hold that the Statute is unconstitutional as applied under Article I, Section 11 of the Pennsylvania Constitution. Accordingly, the order of the trial court is reversed.

On December 19, 2000, Appellants, Frank and Margaret Ieropoli, commenced a civil action, filing a complaint against Crown Cork and twenty-four other defendants. In their complaint, Appellants alleged that Frank Ieropoli was exposed to defendants' respective asbestos products while working as a machinist with General Electric from 1947 until 1979, and that as a result, he sustained pleural effusion and parenchymal scarring. Appellants asserted several causes of action against Crown Cork sounding in tort or contract. For the most part, Appellants asserted these same causes of action against Crown Cork's co-defendants. Appellants requested that a

1. 2001, Dec. 17, P.L. 904, No. 101, § 1.

judgment for compensatory damages, punitive damages, the costs of suit, and any other relief that was just and proper be entered against Crown Cork and its co-defendants individually, and jointly and severally, where appropriate.

The Statute was passed by the General Assembly, signed into law on December 17, 2001, and made immediately effective. The Statute limits the asbestos-related liabilities of corporations incorporated in Pennsylvania before May 1, 2001 that arise out of mergers or consolidations. The Statute provides:

§ 1929.1. Limitations on asbestos-related liabilities relating to certain mergers or consolidations.—

(a) Limitation on successor asbestos-related liabilities.

(1) Except as further limited in paragraph (2) [2] the cumulative successor asbestos-related liabilities [3] of a domestic business corporation that was incorporated in this Commonwealth prior to May 1, 2001, shall be limited to the fair

**2.** Under paragraph (a)(2), if the transferor assumed or incurred successor asbestos-related liabilities in connection with a prior merger or consolidation, then the fair market value of the total assets of the prior transferor is substituted for the limitation on liabilities set forth in paragraph (1). 15 Pa.C.S. § 1929.1(a)(2). In this case, paragraph (a)(1) applies.

**3.** In § 1929.1(e), "[s]uccessor asbestos-related liabilities" are defined as:

Any liabilities, whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated or due or to become due, related in any way to asbestos claims, that were assumed or incurred by a domestic business corporation or foreign business corporation as a result of or in connection with a merger or consolidation, or the plan of merger or consolidation related thereto, with or into another domestic business corporation or foreign business corporation effected under the laws of this Commonwealth or another jurisdiction or which are related in any way to asbestos claims based on the exercise of control or the ownership of stock of such corporation prior to such merger or consolidation. The term shall also include liabilities which, after the time of the merger or consolidation as to which the fair market value of total assets is determined for purposes of subsections (a) and (b), were or are paid or otherwise discharged, or committed to be paid or otherwise discharged, by or on behalf of the corporation, or by or on behalf of a transferor, in connection with settlements, judgments or other discharges in this Commonwealth or another jurisdiction.
15 Pa.C.S. § 1929.1(e).

market value of the total assets of the transferor determined as of the time of the merger or consolidation,[4] and such corporation shall have no responsibility for successor asbestos-related liabilities in excess of such limitation.

15 Pa.C.S. § 1929.1(a)(1).

As to its application, the Statute expressly states that it shall apply to mergers or consolidations which occurred prior to May 1, 2001, and to all asbestos claims,[5] including existing asbestos claims, and to all litigation, including existing litigation. 15 Pa.C.S. § 1929.1(d)(1)–(2).

On February 7, 2002, Crown Cork filed a "Global Motion for Summary Judgment In All Cases Where It Is A Defendant Or Additional Defendant" ("Motion"), requesting that judgment be entered in its favor in several hundred asbestos cases pending against it in the Court of Common Pleas in Philadelphia County.[6]

In its Motion, Crown Cork set forth the following undisputed, material facts of record: Crown Cork is a Pennsylvania business corporation and a manufacturer of beverage cans; Crown Cork purchased a majority of the stock of Mundet Cork Corporation ("Mundet Cork") in November 1963; Mun-

---

4. In § 1929.1(c), the Statute covers the method by which the fair market value of total assets is established. In § 1929.1(b), the Statute places a limitation on the assets of a domestic business corporation that was incorporated in Pennsylvania prior to May 1, 2001 that are available to satisfy successor asbestos-related liabilities. 15 Pa.C.S. § 1929.1(b),(c).

5. In § 1929.1(e), the Statute defines "[a]sbestos claim" as:

Any claim, wherever or whenever made, for damages, losses, indemnification, contribution or other relief arising out of, based on or in any way related to asbestos, including property damage caused by the installation, presence or removal of asbestos, the health effects of exposure to asbestos, including any claim for personal injury, death, mental or emotional injury, risk of disease or other injury or the costs of medical monitoring or surveillance. The term shall also include any claim made by or on behalf of any person exposed to asbestos or any representative, spouse, parent, child or other relative of any such person.

15 Pa.C.S. § 1929.1(e).

6. Crown Cork filed, and the trial court considered, the Motion under local mass tort procedural rules, which consolidate asbestos-related cases for pre-trial purposes. (Trial Court Opinion at 2).

det Cork had a division that made, sold and installed asbestos insulation; Crown Cork never operated the insulation division; Crown Cork sold the insulation division 90 days after acquiring Mundet Cork's stock; Crown Cork acquired all of Mundet Cork's stock and merged with Mundet Cork on February 10, 1996; the value of Mundet Cork's assets at the time of the merger was in the range of $11 to $12 million; the value of Mundet Cork's assets at the time of the merger adjusted for inflation was in the range of $50 to $55 million; Crown Cork was reincorporated in Pennsylvania on March 30, 1996; Crown Cork was sued in asbestos-related cases solely as a successor to Mundet Cork; and Crown Cork has paid out $336 million on asbestos-related claims.

Based on these facts, Crown Cork asserted that because all of the cases that are the subject of its Motion come within the Statute's definition of "asbestos claims"; because it has already paid an amount in excess of the limit on liability created by the Statute; and because Appellants no longer have a damages remedy for the claims they asserted against it, the Statute required that its Motion be granted.

In their Response to Crown Cork's Motion, Appellants did not assert that the presence of genuine issues of material facts precluded the entry of summary judgment in Crown Cork's favor. *See* Pa.R.C.P. 1035.3. Nor did Appellants assert that the Statute does not apply in this case to limit Crown Cork's responsibility for successor-related liabilities. Rather, Appellants argued that application of the Statute in this case is unconstitutional under Article I, Section 11 of the Pennsylvania Constitution. PA. CONST. art. 1, § 11.[7] More specifically,

7. Appellants also argued that the Statute is unconstitutional under PA. CONST. art. III, § 18; PA. CONST. art. III, § 32; PA. CONST. art. III, § 1; and PA. CONST. art. III, § 3; the dormant Commerce Clause of the United States Constitution, U.S. CONST. art. I, § 8, cl. 3; and principles of equal protection. The trial court rejected these arguments. Due to our disposition, we do not address any of these issues.

According to Crown Cork, parties who have also asserted asbestos-related claims against it in cases that are pending in the Court of Common Pleas of Philadelphia County either joined Appellants' Response to Crown Cork's Motion or filed a separate response to Crown Cork's Motion, also raising the constitutionality of the Statute under

Appellants asserted that Article 1, Section 11 was violated because application of the Statute in this case serves to extinguish accrued causes of action.

The trial court rejected Appellants' argument. While acknowledging that the Appellants' causes of action against Crown Cork accrued prior to the Statute's enactment,[8] the trial court concluded that the Statute did not extinguish any cause of action. The trial court stated:

The effect [of the Statute] is not an extinguishment of plaintiffs' causes of action, as [p]laintiffs argue, but rather, a variation of their available remedy. Plaintiffs are not without alternative avenues to pursue their remedies. In fact, the average number of defendants in plaintiffs' lawsuits is 34, and under the theory of joint tortfeasor liability, all of plaintiffs' damages are recoverable against the remaining defendants.

* * *

[T]he statute at issue [in *Gibson v. Commonwealth*[, 490 Pa. 156], 415 A.2d 80 (Pa.1980)] completely extinguished plaintiffs' claims, thus barring plaintiffs from any recovery. The Court finds this case more analogous to what transpired in [*Bible v. Commonwealth*[, 548 Pa. 247], 696 A.2d 1149 (Pa.1997)] where the Supreme Court upheld an amendment to the Worker's Compensation Act, which merely changed the plaintiffs' remedy. Here, the Asbestos plaintiffs' claims will continue through the litigation and should plaintiffs succeed in proving the liability portion of their claims, they will then be required to prove the damages aspect of their claims. Plaintiffs will only be entitled to recover damages against the remaining defendants, if they are able to prove that the negligence of the defendants was a cause in fact of their damages. Retrospective laws are permitted "when

Article 1, Section 11. (Crown Cork's Reply Brief in Support of the Motion at 1.).

8. That the causes of action Appellants asserted against Crown Cork accrued prior the Statute's enactment is not in dispute. In addition, that the causes of action Appellants asserted against Crown Cork are recognized under Pennsylvania law is not in dispute.

they impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair and do not vary existing obligations contrary to their situation when entered into and prosecuted.["]

(Trial Court Opinion at 20–21). Accordingly, the trial court entered an order granting Crown Cork's Motion and dismissing Crown Cork from 376 asbestos cases.

Appellants filed an appeal from the trial court's order with the Superior Court. Crown Cork filed an Application for Extraordinary Relief in this court, asking that pursuant to 42 PA.C.S. § 726,[9] we assume plenary jurisdiction and review the trial court's order entering summary judgment in its favor. This court granted Crown Cork's Application.[10]

We begin with a discussion of Article 1, Section 11 of the Pennsylvania Constitution. Article I, Section 11 has been in the Pennsylvania Constitution since 1790, and is part of the Constitution's Declaration of Rights.[11] Article I, Section 11 states:

§ 11. Courts to be open; suits against the Commonwealth

*All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have*

---

**9.** The Judicial Code provides:

§ 726. Extraordinary jurisdiction

Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or district justice of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done.

42 Pa.C.S. § 726.

**10.** Under the applicable standard, an appellate court may reverse a trial court's entry of summary judgment only where it finds that the trial court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. *See Pappas v. Asbel,* 564 Pa. 407, 768 A.2d 1089 (2001). As this inquiry involves solely questions of law, our standard of review is *de novo.*

**11.** The Pennsylvania Constitutions of 1790 and 1838 contained a provision at Article 9, Section 11 that was virtually identical to Article 1, Section 11. For ease of reference, we will refer to this provision throughout this opinion as Article 1, Section 11.

*remedy by due course of law, and right and justice admin-
istered without sale, denial or delay.* Suits may be brought
against the Commonwealth in such manner, in such courts
and in such cases as the legislature may by law direct.
PA. CONST. art. 1, § 11. (emphasis added).

The constitutions of thirty-nine states contain a provision
that is substantially similar to that part of Article 1, Section 11
that is highlighted. *See* David Schuman, *The Right to a
Remedy,* 65 TEMP. L. REV. 1197, 1201 (1992) ("The Schuman
Article"). This provision, commonly referred to as the "open
courts" or "remedies" clause, is derived from Magna Carta
and Sir Edward Coke's Seventeenth Century commentary on
the Great Charter, which was relied upon by the drafters of
early American state constitutions. Jennifer Friesen, *State
Constitutional Law: Litigating Individual Rights, Claims,
and Defenses* § 6–2(a) (3d ed. 2000).[12]

 In a case like this one, which calls upon the court to
construe an Article of the Pennsylvania Constitution, the
fundamental rule of construction which guides us is that the
Constitution's language controls and must be interpreted in its
popular sense, as understood by the people when they voted
on its adoption. *Firing v. Kephart,* 466 Pa. 560, 353 A.2d 833,
835–36 (1976).

In *Menges v. Dentler,* 33 Pa. 495 (1859), we discussed the
origin and meaning of Article 1, Section 11. In that case, the
heirs of Solomon Menges had secured a decision from this
court that they had title to certain land, and that George
Oyster's possession of the land under a sheriff's deed was
unlawful. Following our ruling, the General Assembly passed
an act, declaring that Oyster's sheriff's deed to the land was
valid. One of the Menges' heirs brought an action and
asserted that the legislation was unconstitutional.

12. Magna Carta contained a promise from King John aimed at curtail-
ing the selling of court writs: "To no one will we sell, to no one will we
refuse or delay, right or justice." In his commentary on this article,
Lord Coke wrote that "every Subject of this Realm, for injury done to
him in [goods, lands, or person], ... may take his remedy by the course
of the Law...." Freisen, *supra* page 8 at § 6–2(a) nn. 13, 16 (citations
omitted).

We agreed, concluding that the legislation violated Article 1, Section 11 and then Article 9, Section 9 of the Pennsylvania Constitution.[13] In doing so, we acknowledged that these Articles were taken from Magna Carta and described them as "imperative limitations on legislative authority, and imperative impositions of judicial duty. To the judiciary they say:—You shall administer justice to all men by due course of law, and without sale denial or delay, and to the legislature they say:— You shall not intermeddle with such functions." 33 Pa. at 498.

Further, we explained that the guarantee of a "remedy by due course of law" in Article 1, Section 11, means that a case cannot be altered, in its "substance", by a subsequent law:

[L]et us endeavor to get a clear view of the thought intended to be expressed by the phrases "by due course of law" and "by the law of the land." So far as they relate to the forms of remedy, we need only say, that no one can justly complain of a change in them, after the arising of his cause of action, provided an adequate remedy is still allowed him. There is a more fundamental thought involved in these words.

The law which gives character to a case, and by which it is to be decided (excluding the forms of coming to a decision), is the law that is inherent in the case, and constitutes part of it when it arises as a complete transaction between the parties. If this law be changed or annulled, the case is changed, and justice denied, and due course of law violated.

\* \* \*

When, therefore, the constitution declares that it is the exclusive function of the courts to try private cases of disputed right, and that they shall administer justice "by the law of the land," and "by due course of law;" it means to say, that the law relating to the transaction in controversy, at the time when it is complete, shall be an inherent element

13. Article 9, Section 9 guaranteed that no man shall be deprived of life, liberty, or property, unless by the judgment of his peers. *Menges v. Dentler*, 33 Pa. at 498.

of the case, and shall guide the decision; and that the case shall not be altered, in its substance, by any subsequent law. 33 Pa. at 498–99.

Based on these principles, we refused to apply the legislation to the case before us. We concluded that "[w]e are therefore bound to declare the Act of the Assembly, passed for the purpose of deciding this controversy as it originally arose, constitutes no part of the present case, and cannot be allowed to influence our judgment relative to the effect of the sheriff's deed to Oyster." *Id.* at 499.

Subsequently, these same principles guided our decision in *Lewis v. Pennsylvania R. Co.*, 220 Pa. 317, 69 A. 821 (1908). In *Lewis*, the plaintiff, the widow of a Pullman car conductor who had lost his life in an accident while on a railroad line, brought a cause of action for negligence against the railroad. The Act of April 4, 1868, which was in effect at the time of the conductor's death, provided that when a person sustained personal injury or loss of life while lawfully engaged on the premises of a railroad company on behalf of his employer, the right of action and recovery in any case against the railroad was such as only would have existed if that person had been an employee of the railroad. *See Peplinski v. Pennsylvania R. Co.*, 203 Pa. 52, 52 A. 32 (1902). At that time, a railroad employee could not recover against his railroad company employer for the negligent acts of a fellow employee. *Id.* While the plaintiff's case was pending, the Act of June 10, 1907 repealed the Act of April 4, 1868, thereby expanding the circumstances under which a railroad could be held liable to parties like the plaintiff. The plaintiff sought to recover in her case against the defendant railroad under the later-enacted statute. This court did not allow her to do so. We held that both the plaintiff's right of action and the defendant's liability to the plaintiff on her action was controlled by the Act of April 4, 1868, the law that was in force at the time the cause of action arose. Citing *Menges v. Dentler*, we likened a complete cause of action and a legal exemption from liability on that cause of action as involving vested rights, and stated:

All authorities agree that the repeal of a statute does not take away the plaintiff's cause of action under it for damages for an injury to person or property. They rest on the sound doctrine, expressed in *Menges v. Dentler*, [33 Pa. at 495] and repeated in *Kay v. Pennsylvania Railroad Company*, 65 Pa. 269, that the law of the case at that time when it became complete is an inherent element in it; and, if changed or annulled, the law is annulled, justice denied, and the due course of law is violated. A legal exemption from liability on a particular demand, constituting a complete defense to an action brought, stands on quite as high ground as a right of action. If the law of the case at the time when it became complete is such an inherent element in it that a plaintiff may claim it as a vested right, on what possible ground can it be held that a defendant has no vested right with respect to an exemption or defense? The authorities make no distinction between them.... "There is a vested right in an accrued cause of action, [and] in a defense to a cause of action...."

69 A. at 823 (quotation omitted).

In *Gibson v. Commonwealth*, 490 Pa. 156, 415 A.2d 80 (1980), the case that Appellants rely upon presently, we directly considered whether Article 1, Section 11 precluded the application of subsequent legislation to an accrued cause of action. In *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), this court abrogated the doctrine of sovereign immunity. Thereafter, the legislature promulgated the Sovereign Immunity Act ("Act"), wherein the legislature reinstated the bar of sovereign immunity, but declared that the bar was waived as to a cause of action for damages arising out of a negligent act against Commonwealth parties only to the extent set forth in certain listed exceptions. *See* 42 Pa.C.S. § 8522(a),(b). The Act expressly manifested the legislature's intention that it apply to claims which had arisen before its enactment. *Gibson*, 415 A.2d at 82.

In light of *Mayle*, plaintiffs commenced several civil actions against the Commonwealth, alleging that the Commonwealth's negligent supervision of a dam led to a flood, causing them

personal injury and property damage. By preliminary objections, the Commonwealth moved to dismiss plaintiffs' claims under the Act. The Commonwealth Court granted the Commonwealth's preliminary objections, holding that the Act applied to plaintiffs' claims; that the claims did not fall within any of the Act's exceptions; and that application of the Act to plaintiffs' causes did not violate any constitutional prohibitions.

On appeal, plaintiffs conceded that under the Act, the causes of action they had brought were no longer available against the Commonwealth. They argued, however, that application of the Act to the particular causes of action they asserted offended, *inter alia,* Article 1, Section 11 of the Pennsylvania Constitution because those claims had accrued prior to the Act's passage.

We agreed with plaintiffs, and held that the Act could not constitutionally govern plaintiffs' accrued causes of action because an accrued cause of action is a vested right which legislation may not extinguish. Quoting from the *Lewis* case, we stated:

'There is a vested right in an accrued cause of action.... A law can be repealed by the law giver; but the rights which have been acquired under it, while it was in force, do not thereby cease. It would be an absolute injustice to abolish with the law all the effects it had produced. This is a principle of general jurisprudence; but a right to be within its protection must be a vested right.'

415 A.2d at 83 (*quoting Lewis,* 69 A. at 823); *see also Jenkins v. Hospital of the Medical College of Pennsylvania,* 535 Pa. 252, 634 A.2d 1099 (1992) (holding that it was unconstitutional to apply 42 Pa.C.S. § 8305(a) that states that there shall be no cause of action or an award of damages for a claim for wrongful birth to an accrued cause of action for wrongful birth because it is a vested right).[14]

14. The courts in other states that have state constitutions with provisions similar to Article 1, Section 11 have likewise concluded that the provision prohibits the legislative elimination of an accrued cause of action because it is a vested right. *See, e.g., Dua v. Comcast Cable of Maryland, Inc.,* 370 Md. 604, 805 A.2d 1061 (2000); *Berry v. Beech*

■ Turning to the respective arguments the parties have presented, Appellants assert that as a general proposition, Article 1, Section 11 does not prevent the General Assembly from enacting a statute that eliminates a cause of action that exists at common law. *See, e.g., Sherwood v. Elgart*, 383 Pa. 110, 117 A.2d 899 (1955).[15] Appellants contend that what Article 1, Section 11 precludes is the elimination of accrued causes of action by newly-enacted legislation. According to Appellants, the application of the Statute to the causes of action they brought against Crown Cork violates this rule.

Crown Cork counters with the trial court's reasoning and contends that the Statute merely varies the remedy that was available to Appellants. Crown Cork further contends that the fact that Appellants have collected settlement monies or will recover damages from its co-defendants shows that Article 1, Section 11 is not violated. Finally, citing *Smith v. Fenner*, 399 Pa. 633, 161 A.2d 150 (1960), Crown Cork asserts that because the Statute only alters the allocation of damages among multiple defendants, Article 1, Section 11 is not implicated.[16]

■ At this point it is important to observe that the Statute, like any legislative enactment, enjoys a presumption of constitutionality; that Appellants bear a heavy burden to

*Aircraft Corp.*, 717 P.2d 670 (Utah.1985); *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E.2d 868 (1983); *see also* The Schuman Article at 1206–07 (in states that have remedies clauses in their respective state constitutions, the protection of a plaintiff's vested interest in a particular remedy under an accrued cause of action appears nearly universal.)

**15.** In *Sherwood,* a statute that exempted a hotel proprietor from liability for the loss of personal property kept in a guest's room and destroyed by an unintentional fire withstood a constitutional challenge under Article 1, Section 11. *Sherwood,* 117 A.2d at 902. This appeal does not raise a question about, nor do we speak to, the legislature's power to eliminate a cause of action from the common law. It should be also noted that in *Sherwood,* the plaintiff did not argue that the statute deprived him of a cause of action that had accrued before the statute was enacted. *Id.* at 899.

**16.** Several amicus curiae briefs that support Crown Cork's position were filed with the court. To the extent that these briefs discuss the issue raised under Article 1, Section 11, they present arguments similar to those that Crown Cork makes, which are addressed herein.

prove it unconstitutional; and that "[a] statute will only be declared unconstitutional if it clearly, palpably and plainly violates the constitution." *Erfer v. Commonwealth*, 568 Pa. 128, 794 A.2d 325, 331 (2002) (citation omitted); *see* 1 Pa.C.S. § 1922(3).

We begin our analysis of Appellant's constitutional challenge to the Statute by determining what the Statute's application in this case means for Crown Cork. This determination is a matter of statutory construction. As such, the principles set forth in the Statutory Construction Act of 1972 ("Act"), 1 Pa.C.S. § 1501 *et seq.*, govern. Under the Act, the object of the interpretation and construction of statutes is to ascertain and effectuate the General Assembly's intention. 1 Pa.C.S. § 1921(a). A statute's words and phrases are to be construed according to their common and approved meaning. 1 Pa.C.S. § 1903(a). When the words of statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of following its spirit. 1 Pa.C.S. § 1921(b). Finally, it may be presumed that the General Assembly intends an entire statute to be effective and certain and does not intend a result that is absurd, impossible of execution or unreasonable. 1 Pa.C.S. § 1922(1).

Through the causes of action they brought against Crown Cork, Appellants seek a payment of damages from the company for the losses they allegedly sustained as a result of Frank Ieropoli's exposure to certain asbestos products that Crown Cork's merger partner manufactured and sold. Because Crown Cork has met § 1929.1(a)(1)'s limit, however, the Statute provides that Crown Cork "shall have no responsibility for cumulative successor asbestos-related liabilities...." 15 Pa. C.S. § 1929.1(a)(1). Under § 1929.1(e)'s definition, "successor asbestos-related liabilities" are "[a]ny liabilities, whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated or due or to become due, related in any way to asbestos claims", and include payments made "in connection with settlements, judgments or other discharges in this Commonwealth or another jurisdiction." 15 Pa.C.S. § 1929.1(e). Under that same defi-

nition, an "asbestos claim" is "[a]ny claim, wherever or whenever made for damages, losses, indemnification, contribution or other relief arising out of, based on or in any way related to asbestos...." 15 Pa.C.S. § 1929.1(e).

In our view, the Statute is clear and unambiguous as to the protection the General Assembly intended to give to Crown Cork. The words of the Statute state that a qualified corporation is not responsible for any liability that is related to any claim for relief related to asbestos. Thus, in the present case, the Statute protects Crown Cork from any liability to Appellants on the causes of action they brought against it.

It now remains to determine whether the protection from liability on Appellants' causes of action that the Statute gives to Crown Cork affects those causes of action in a way that Article 1, Section 11 prohibits. For this, we begin with the meaning of the phrase "cause of action". As we have stated in other cases, the phrase does not have a single definition, and means different things depending on context. *See Fisher v. Hill,* 368 Pa. 53, 81 A.2d 860, 863–64 (1951).[17] In this case, "cause of action" relates to remedy. It is the vehicle by which a person secures redress from another person for the consequences of an event that is a legal injury. *See Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897, 902–05 (1975). Moreover, as we have seen, a cause of action that has accrued takes on an even greater meaning. It is a vested right, which under Article 1, Section 11, may not be eliminated by subse-

17. This court has repeatedly quoted with approval the following passage from a United States Supreme Court opinion on the various concepts that "cause of action" can encompass:

A "cause of action" may mean one thing for one purpose and something different for another.... At times and in certain contexts, it is identified with the infringement of a right or the violation of a duty. At other times and in other contexts, it is a concept of the law of remedies, the identity of the cause being then dependent on that of the form of action or the writ. Another aspect reveals it as something separate from writs and remedies, the group of operative facts out of which a grievance has developed.

*Fisher v. Hill,* 81 A.2d at 864 (*quoting United States v. Memphis Cotton Oil Co.,* 288 U.S. 62, 67–68, 53 S.Ct. 278, 77 L.Ed. 619 (1933) (footnotes omitted)).

quent legislation. *Gibson,* 415 A.2d at 82–83; *Lewis,* 69 A. at 823; *Menges v. Dentler,* 33 Pa. at 498–99.

In light of these principles, the violation of Article 1, Section 11 that the Statute's application occasions in this case is clear. Before the Statute's enactment, each cause of action that Appellants brought against Crown Cork was a remedy—it was the vehicle by which Appellants lawfully pursued redress, in the form of damages, from Crown Cork for an alleged legal injury. But under the Statute, Appellants cannot obligate Crown Cork to pay them damages on those causes of action. In this way, each cause of action has been stripped of its remedial significance, as it can no longer function as the means by which Appellants may secure redress from Crown Cork. As a remedy, each cause of action has been, in essence, extinguished. Under Article 1, Section 11, however, a statute may not extinguish a cause of action that has accrued. *Gibson,* 415 A.2d at 82–83. Therefore, as Appellants' causes of action accrued before the Statute was enacted, we hold that the Statute's application to Appellants' causes of action is unconstitutional under Article 1, Section 11.

The trial court reasoned and Crown Cork argues that the Statute does not offend Article 1, Section 11 because Appellants have settled with some of Crown Cork's co-defendants and continue to pursue a theory of joint tortfeasor liability against others. In other words, because the Statute's application has not and will not prevent Appellants from recovering money from other defendants by way of settlement or judgment, no cause of action has been extinguished.

What this reasoning overlooks is the individual nature of a cause of action. A plaintiff does not assert one cause of action against multiple defendants. Rather, a plaintiff asserts one cause of action (or two or several causes of action) against a single defendant. While a plaintiff may, under the appropriate circumstances, join the cause of action he has against one defendant with the cause of action he has against another defendant in one lawsuit, the cause of action he asserts against each defendant remains distinct. *General Electric Credit*

*Corp. v. Aetna Casualty and Surety Co.,* 437 Pa. 463, 263 A.2d 448, 451–52 (1970). Thus, the fact that the causes of action Appellants brought against Crown Cork's co-defendants are proceeding has no bearing on the Statute's unconstitutional effect on the accrued causes of action that Appellants brought against it.

Likewise, the fact that Appellants might under the comparative negligence statute, 42 Pa.C.S. § 7102(b), recover their damages award from some or all of the other defendants whom they hold jointly and severally liable is irrelevant. It is because Crown Cork can no longer, because of the Statute's application, be held jointly and severally liable on Appellants' accrued causes of action that Article 1, Section 11 is violated.[18]

Citing *Smith v. Fenner,* 161 A.2d at 150, Crown Cork further asserts that the Statute's application passes constitutional muster because it does no more than alter the allocation of damages among multiple defendants. Crown Cork's argument is without merit for several reasons. First, it mischaracterizes the gist of the Statute's function, which is to shield Crown Cork from an obligation to pay damages on Appellants' asbestos-related causes of action. Second, it ignores the constitutional issue that is raised by the fact that Crown Cork is no longer among the defendants against whom Appellants' damages may be assessed and from whom Appellants may recover on accrued causes of action because of the Statute's application.

Third, the case of *Smith v. Fenner* is inapt. In *Smith v. Fenner,* we considered whether the Uniform Contribution Among Tortfeasors Act ("Uniform Act"), which states, *inter alia,* that a release of one joint tortfeasor does not discharge another joint tortfeasor, unless the release so provides, could be applied retroactively to an accrued cause of action. 42 Pa.C.S. § 8326 (then, 12 P.S. § 2085). It was the law prior to the Uniform Act's passage that the release of one joint tortfeasor operated to release all others who were liable for

18. It becomes clear that Crown Cork's position is also not logical when one considers, for example, the mere possibility that all of Crown Cork's co-defendants ultimately become incapable of paying damages.

the same injury. *Smith v. Fenner,* 161 A.2d at 152–53. We concluded that the Uniform Act could be applied to plaintiff's cause of action because such application impaired no contract and disturbed no vested right. We stated:

On June 4, 1950—the date of this accident—a cause of action arose against all three appellees. Any one or all three appellees might have been liable for all of Smith's damages. As the law stood at the time of the happening of the accident *if* any one of the three appellees had entered into a settlement of Smith's claim against that particular appellee and *if* Smith had given a release to such appellee, the other two appellees would thereby have been released from any claim by Smith. The Uniform Act changed the effect of such release, if given, but it effected no change in the cause of action nor did it increase what could have been the liability of any one or all appellees at the time the cause of action arose. None of the appellees had any vested right to be exonerated from liability at the time of securing of a release by one or the other appellees. The change effected by the Uniform Act [was one of procedure which] did not disturb any substantive right of any appellees.

*Id.* at 155 (citations and footnotes omitted) (emphasis in original). The present case is vastly different. It raises a question under Article 1, Section 11; the Statute has an effect on accrued causes of action, which are vested rights; and it concerns legislation that shields Crown Cork from liability on Appellants' causes of action, a liability that Appellants could have imposed upon Crown Cork under the law that existed prior to its passage.

Finally, the trial court's and Crown Cork's reliance on *Bible v. Commonwealth,* 548 Pa. 247, 696 A.2d 1149 (1997), to state that the Statute merely varied Appellants' remedy is misplaced. In that case, the remedy at issue was the claim that a person may assert under the Workers' Compensation Act for a complete loss of hearing. 77 P.S. § 513(8). Claimants argued, *inter alia,* that a retroactive amendment to the Act, which rewrote the specific loss schedule for loss of hearing, altered the elements of a cause of action for complete hearing

loss so substantially as to abrogate their claims within the meaning of *Gibson.* We rejected this argument. We determined that the amendment did not extinguish a claim, but rather, created a new claim, i.e., one for partial loss of hearing. *Bible v. Commonwealth,* 696 A.2d at 1153–54. We also determined that the amendment only varied claimants' remedy because it substituted a legislatively-defined method of determining hearing loss for the rule that the courts had developed to assess it. Based on the principle that a judicial interpretation of a statute is not a vested right, we concluded that this was permissible. *Id.* Therefore, the holding in *Bible v. Commonwealth* is inapt.

By way of conclusion, we in the majority point out that we are as concerned with the heavy toll that asbestos litigation is visiting upon certain Commonwealth corporations as are our respected colleagues in the dissent. Nevertheless, any statutory effort aimed at reformation must not offend the Remedies Clause, if it is to pass constitutional muster. That Clause, which binds the both the legislature and the courts, see *Menges v. Dentler,* 33 Pa. at 498, provides that an accrued cause of action is a vested right and as such, cannot be eliminated by subsequent legislation. This is the basic and undeniable principle that applies here. We know of no authority that supports the proposition that an accrued cause of action that is the subject of a merger does not receive the Remedies Clause's full protection. Likewise, we know of no authority (separate from the Statute) that would in these circumstances, override the general tenet of corporate law that states that the corporation that absorbs another corporation in a merger becomes legally responsible in every sense of the word for the latter's liabilities and debts. *See* William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations, Vol. 15, § 7121 (rev. ed. 1999).

Thus, for all of the foregoing reasons, we hold that the Statute as applied in this case is unconstitutional under Article 1, Section 11. Accordingly, the Order of the trial court granting Crown Cork's Motion for Summary Judgment and dismissing it from the 376 captioned cases found in Appendix

"A" to the trial court's Findings and Order is reversed. This case is remanded to the trial court for proceedings consistent with this opinion.

Justice NEWMAN files a dissenting opinion in which Justice EAKIN joins.

Justice SAYLOR files a dissenting opinion in which Justice EAKIN joins.

Justice NEWMAN, dissenting.

I respectfully dissent from the decision announced by the Court this day. I believe that the statute at issue does not "clearly, plainly, and palpably" violate the state or federal Constitution and, accordingly, I would affirm the Order of the trial court granting summary judgment to Crown, Cork & Seal Company, Inc. (Crown).

The General Assembly enacted 15 Pa.C.S. § 1929.1 (Limitations on Asbestos–Related Liabilities Relating to Certain Mergers or Consolidations) on December 17, 2001, to stem the ever-expanding asbestos-related liabilities of corporations, such as Crown, that incurred asbestos-related liability only by virtue of a previous merger or consolidation with a company that produced, distributed, or installed asbestos or asbestos products. *See* 2001 LEGISLATIVE JOURNAL—SENATE 1231 (December 11, 2001) (statement of Sen. Stack) (describing the "unprecedented avalanche of asbestos-related claims" as "an elephantine mess" requiring "legislative solutions"). Section 1929.1(a)(1) provides in relevant part that "the cumulative successor asbestos-related liabilities of a domestic business corporation that **was incorporated in this Commonwealth prior to May 1, 2001,** shall be limited to the fair market value of the total assets of the transferor determined as of the time of the merger or consolidation. . . ." 15 Pa.C.S. § 1929.1(a)(1) (emphasis added). The statute applies to all mergers and consolidations consummated prior to May 1, 2001, whether or not litigation was pending against a successor corporation as of the date of enactment. 15 Pa.C.S. § 1929.1(d)(1) and (2).

On February 7, 2002, Crown filed a Global Motion for Summary Judgment, seeking dismissal of 378 cases then pending against it in the Court of Common Pleas of Philadelphia County (trial court). The parties agree that, as of February 7, 2002, Crown already had paid out approximately $336 million for asbestos claims as the successor corporation to Mundet Cork Corporation (Mundet Cork). The fair market value, adjusted for inflation, of Crown's 1963 purchase of Mundet Cork is in the range of $50–$55 million. Therefore, Crown contended that, pursuant to Section 1929.1, it had expended its liability six-fold. The trial court agreed and granted summary judgment in all 378 pending cases. Frank and Margaret Ieropoli (the Ieropolis), among the group of plaintiffs who had sued asbestos defendants including Crown, appealed to the Superior Court and we exercised our King's Bench powers to review the decision of the trial court.[1]

The majority finds Section 1929.1 repugnant to Article I, Section 11 of the Pennsylvania Constitution, which states that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation **shall have remedy by due course of law,** and right and justice administered without sale, denial or delay." (emphasis added). *Accord Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 163, 2 L.Ed. 60 (1803) (the "very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury"). We have explained that this provision of our state Constitution ensures "that the Legislature may not extinguish a right of action which has already accrued to a claimant." *Gibson v. Commonwealth,* 490 Pa. 156, 415 A.2d 80, 83 (1980).

"There is, of course, a strong presumption in favor of the constitutionality of statutes—a presumption which reflects on the part of the judiciary the respect due to the legislature as a co-equal branch of government." *School Districts of Deer*

---

1. *See* 42 Pa.C.S. § 726 (allowing the Supreme Court of Pennsylvania to exercise emergency jurisdiction over any matter then pending in any court of the Commonwealth). By exercising our King's Bench powers, we divested the Superior Court of jurisdiction and took cognizance of the issue presented.

*Lakes and Allegheny Valley v. Kane,* 463 Pa. 554, 345 A.2d 658, 662 (1975) (internal footnotes omitted). "Courts may not declare a statute unconstitutional 'unless it clearly, palpably, [and] plainly violates the Constitution.'" *Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 331 A.2d 198, 205 (1975) (quoting *Daly v. Hemphill,* 411 Pa. 263, 191 A.2d 835, 840 (1963)). It is the duty of this court . . . in construing [a] statute to give it, if possible, an interpretation which will prevent any conflict with the Constitution. *Hotel Casey Co. v. Ross,* 343 Pa. 573, 23 A.2d 737, 740 (1942).

A right of action implicates the right of an injured party to secure redress for violation of his rights by bringing a cause of action in tort. Blacks Law Dictionary 1325 (6th ed. 1991). A cause of action in tort accrues on the date that the accident or the injury occurs. *Smith v. Fenner,* 399 Pa. 633, 161 A.2d 150, 154–155 (1960). The phrase cause of action is incapable of a precise definition, as the majority aptly notes. *See also United States v. Memphis Cotton Oil Co.,* 288 U.S. 62, 67–68, 53 S.Ct. 278, 77 L.Ed. 619 (1933). In the present case, the majority defines cause of action as a right to a remedy: the vehicle by which a person secures redress from another person for the consequences of an event that is a legal injury. Majority Opinion at 16, n. 17. I must quarrel with the breadth of this concept because it fails to limit adequately the class of entities from which the injured party can seek that redress. Instead, I note that a cause of action in tort necessarily requires a set of facts that gives rise to an obligation between the party claiming injury and the party that is allegedly responsible for that injury. What is necessary to the definition of "cause of action" is the identification of a party responsible for the injury allegedly suffered.

The problem in the instant case is the identification of the party legally responsible for the injuries suffered by the Ieropolis. The responsible party in the instant case is not Crown; rather it is Mundet Cork. My point in this regard is not intended to undo a century of successor liability law, but to acknowledge the artifice of deeming a successor corporation responsible for the injury. The cause of action in this case

does not accrue against Crown;[2] more accurately, it accrues against Mundet Cork and, pursuant to its status as successor, Crown steps into the shoes of Mundet Cork to ensure that, as between a blameless plaintiff and a corporation that has succeeded a corporation responsible for an injury, the successor corporation, not the blameless plaintiff, is responsible for the acts of the tortfeasor. Successor liability is an important tenet of our system of jurisprudence, but it is not one protected by Article I, Section 11 of the Pennsylvania Constitution. Causes of action in tort do not accrue in a vacuum—rather, they arise against an entity for a wrong done at the time an injury is incurred. Article I, Section 11 forecloses retroactive elimination or limitation of the liability of the tortfeasor.

Conceived of in this way, Section 1929.1 does not extinguish a vested right or an accrued cause of action. Neither does it eliminate a right to a remedy. Instead, Section 1929.1 limits the amount of liability that successor corporations can be made to be accountable for and, ultimately, limits the class of entities who can be made to bear the burden of that right. This is not to say that the legislature could constitutionally provide that all pending asbestos cases are summarily dismissed—this would extinguish vested causes of action against entities responsible for injuries. But the constitutional provision with which we are concerned, Article I, Section 11, does not estop the General Assembly from limiting (or eliminating) the effect of successor liability, even retroactively. *See Jenkins v. Hospital of the Medical College of Pennsylvania*, 535 Pa. 252, 634 A.2d 1099, 1104 (1993) ("[n]either the federal constitution nor our state constitution invalidates a non-penal statute merely because it is retroactive, unless such legislation impairs contractual or other vested rights") (internal citation omitted). Section 1929.1 does not retroactively limit or extinguish the liability because the successor corporation (in the case *sub judice,* Crown) is not the tortfeasor.

**2.** I recognize that Crown (the successor) is the entity that the plaintiff will sue, but in the theoretical sense, Crown's responsibility is predicated solely on its status as a successor to Mundet Cork (the alleged tortfeasor).

It is conceivable, although unlikely, that at some point in the future a plaintiff in a pending asbestos case could, by virtue of Section 1929.1, be denied any recovery. That would be an unfortunate result of my position in this case, but that potentiality should not enter into the consideration of a court of last resort charged with determining whether the statute passes constitutional muster. In my opinion, the Ieropolis have failed to demonstrate, "clearly, plainly, and palpably," that Section 1929.1 violates Article I, Section 11 of the Pennsylvania Constitution.

I recognize that the Ieropolis have presented five other constitutional challenges to Section 1929.1:(1) violation of the Commerce Clause; (2) violation of equal protection principles; (3) the statute was not properly enacted, in violation of Article III, Sections 1 and 3 of the Pennsylvania Constitution; (4) the statute is a special law, in violation of Article III, Section 32; and (5) the statute sets an unconstitutional limit on personal injury damages, in violation of Article III, Section 18. However, rather than discussing these meritless challenges *seriatim,* I would instead affirm the well-reasoned Opinion of the trial court rejecting each of these contentions. *See In Re: Asbestos Litigation,* 59 Pa. D. & C. 4th 62, 72–80, 88–99 (Ct.Com.Pl. 2002).

Justice EAKIN joins this dissenting opinion.

Justice SAYLOR, dissenting.

As indicated in the common pleas court's summary of the undisputed facts, Crown Cork is a Pennsylvania packaging manufacturing corporation that has never in its 110–year history made, distributed, or sold asbestos—its potential liability to plaintiffs in asbestos-related causes of action is predicated solely on the theory of successor liability based upon its brief, passive ownership of a company that once produced asbestos but did not do so while in Crown Cork's control. None of the cases presently cited by the majority involves a successor liability paradigm; rather, each concerns attempts to adjust interests and/or liabilities between parties with more

direct involvement in the underlying affairs giving rise to the interests/liabilities at stake.

In my view, this attribute of the potential liabilities that the General Assembly has sought to address is due a greater role than the majority allows it in the assessment of the legislation's consonance with the Remedies Clause, PA. CONST. art. I, § 11. Successor liability in the context of a merger represents an assumption of liabilities by operation of law which has the effect of exposing the successor's larger pool of assets to liability that, absent the merger, would not have attached. *See generally* 3 SUMMARY OF PENNSYLVANIA JURISPRUDENCE 2D TORTS § 41.104 (West Group 1999). It is an issue of first impression whether the excess exposure created by the doctrine must share the same degree of vesting under Remedies Clause as would the tortfeasor's primary liability in the first instance. Where, as here, the General Assembly has attempted to reasonably limit such assumed, excess exposure,[1] and particularly in a situation in which the successor corporation already has contributed toward payment of asbestos-related claims an amount several fold the value of the acquired entity's assets, I would not find that the statute, either facially or as applied, offends the Remedies Clause.

Justice EAKIN joins in this dissenting opinion.

---

1. A sponsor of the Senate bill underlying Section 1929.1 explained the purposes of the legislation as follows:

It is now evident that as an unforeseen consequence of mergers that happened in the past, Pennsylvania corporations that never themselves produced, sold, or installed Asbestos products may become subject to Asbestos-related liabilities. Similarly, the amount of assets fairly available to satisfy those Asbestos-related liabilities may have become unfairly and unjustly enlarged. There is an unprecedented avalanche of Asbestos-related claims made in the United States today. What has been described by the U.S. Supreme Court as an elephantine mess that the court has called out for legislative solutions. In view of this historically unprecedented situation, it is an essential governmental interest and matter of public policy that the amount of assets available to satisfy Asbestos-related claims be fairly limited to the value of assets of the person or company that actually caused the damage through the production, sale, or installation of Asbestos. PA. LEGIS. JOURNAL—SENATE 1231 (Dec. 11, 2001).