**VALLEY MEDICAL FACILITIES, INC., A Pennsylvania Corporation, and Tri–State Obstetrics and Gynecology, Inc. and James A. Crozier, M.D. Appellees**

v.

**PENNSYLVANIA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION and Randy Ross and Catherine Ross, Individually and as Parents and Natural Guardians of Randy Charles Ross, a Minor Appeal of: Pennsylvania Property and Casualty Insurance Guaranty Association Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 5, 2005.

Filed June 21, 2006.

Joseph Hankins, Philadelphia, for appellant.

Marshall J. Tindall, Pittsburgh, for Crozier, Valley Medical and Tri-State, appellees.

BEFORE: HUDOCK, PANELLA, and TAMILIA, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Pennsylvania Property and Casualty Insurance Guaranty Association ("PPCIGA") appeals from the order entered on December 14, 2004, by the Honorable Robert E. Kunselman, Court of Common Pleas of Beaver County. After careful review, we affirm.

¶ 2 Valley Medical Facilities, Inc. ("VMF"), is the successor of The Medical Center ("TMC"), the defendant hospital in the underlying medical malpractice action. The action arose as a result of injuries sustained from the negligent care surrounding the birth of the minor plaintiff, Randy Charles Ross. Following Ross' birth on March 29, 1997, his parents filed an action against TMC and James A. Crozier, M.D., claiming that Ross had sustained injuries attributed to the negligence of employees of TMC as well as the professional negligence of Dr. Crozier.

¶ 3 At the time of the alleged negligence, PHICO Insurance Company was the medical malpractice insurer for both TMC and Dr. Crozier. Specifically, PHICO provided TMC with a $300,000.00 primary coverage policy limit and an excess coverage policy limit of $5,000,000.00, and Dr. Crozier with a $200,000.00 primary coverage limit. Additionally, the Medical Care Availability and Reduction of Error Fund ("M–Care Fund"), 40 PA.STAT. § 1303.101 *et seq.*, covered TMC for $900,000.00 in excess of its primary limits and Dr. Crozier for $1,000,000.00 in excess of his primary limits.

¶ 4 On February 1, 2002, PHICO was declared insolvent by the Pennsylvania Department of Insurance and placed in liquidation pursuant to an order issued by the Commonwealth Court. Consequently, all covered claims under against PHICO's insureds were transferred to PPCIGA, including the law suit filed on behalf of Ross. Thereafter, on April 30, 2003, following a jury trial, a verdict was rendered against TMC and Dr. Crozier in the amount of $4,100,000.00. The jury allocated 90% of the causal negligence to TMC and 10% of the causal negligence to Dr. Crozier. The verdict was subsequently molded to $4,846,571.60 to reflect the addition of delay damages and to deduct the statutory non-duplication of recovery offset due to PPCIGA.

¶ 5 TMC and Dr. Crozier subsequently requested PPCIGA to tender $300,000.00 on behalf of TMC's primary coverage and $200,000.00 on behalf of Dr. Crozier's primary coverage to the M–Care Fund and to pay an additional $300,000.00 on behalf of TMC's excess coverage. PPCIGA refused, alleging that it was only liable for

$300,000.00, and therefore only tendered the difference between the statutory setoff and $300,000.00 to the M–Care Fund. PPCIGA further refused a demand to pay its share of the delay damages and post-verdict interest, contending that its liability was limited to $300,000.00 less the statutory offset.

¶ 6 In an effort to satisfy the verdict, TMC agreed to pay the full amount which remained due, including delay damages and post-verdict interest, less the amount paid by PPCIGA and the amounts payable by the M–Care Fund. TMC thereafter took an assignment from Dr. Crozier of his rights against PPCIGA, and initiated a Declaratory Judgment Action against PPCIGA seeking a declaration that PPCIGA is liable under the Pennsylvania Property and Casualty Insurance Guaranty Act[1] ("the Act") to pay an additional $300,000.00 on behalf of TMC's excess limits and an additional $200,000.00 on behalf of Dr. Crozier's primary limits as well as its share of delay damages and post verdict interest.[2] On December 14, 2004, the trial court issued an order directing PPCIGA to pay both TMC's excess limits of $300,000.00 and Dr. Crozier's primary limits of $200,000.00.[3] The trial court further determined that PPCIGA was not obligated to pay any amounts for post-verdict interest or delay damages. This timely appeal followed.

¶ 7 On appeal, PPCIGA raises the following issue for our review:

Is the Pennsylvania Property and Casualty Insurance Guaranty Association's $300,000 limit, which is expressly stated in the Pennsylvania Property and Casualty Insurance Guaranty Association Act as "per claimant," instead to be applied "per insured" and "per policy"?

Appellant's Brief, at 4.

¶ 8 Preliminarily, we note that our standard of review in well established:

an appellate court may reverse a trial court's entry of summary judgment only where it finds that the trial court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. See Pappas v. Asbel, 564 Pa. 407, 768 A.2d 1089 (2001). As this inquiry involves solely questions of law, our standard of review is de novo.

Ieropoli v. AC & S Corp., 577 Pa. 138, 147 n. 10, 842 A.2d 919, 924 n. 10 (Pa.2004). Furthermore, our scope of review is plenary. Lackner v. Glosser, 892 A.2d 21, 29 (Pa.Super.2006).

¶ 9 With this standard in mind, we proceed to address PPCIGA's issue on appeal concerning the interpretation of "per claimant" under the Act. Initially, we note that the Act mandates that every insurer doing business in the Commonwealth of Pennsylvania participate in PPCIGA as a condition of its authority to write property and casualty insurance policies in the Commonwealth. See 40 PA.STAT. § 991.1803(a). In accordance with the requirements of the Act, PPCIGA pays covered claims of insolvent insurers up to the amount of the policy limits of the insolvent

---

1. 40 PA. STAT. §§ 991.1801—991.1820.

2. "PPCIGA is an agency created by the Pennsylvania legislature to provide limited statutory benefits when there is a covered claim arising under the insurance policy of an insolvent insurer ...." Carrozza v. Greenbaum, 866 A.2d 369, 375 n. 6 (Pa.Super.2004), appeal denied, 584 Pa. 698, 882 A.2d 1004 (2005).

3. Although VMF and Dr. Crozier filed Motions for Judgment on the Pleadings, the trial court found that there were no factual disputes, and treated the motions as if they requested summary judgment.

insurer. *See* 40 PA.STAT. § 991.1803(b). Thus, PPCIGA enables the payment of covered claims under certain property and casualty insurance policies and avoids financial loss to claimants or policyholders due to an insurer's insolvency. *See* 40 PA.STAT. § 991.1801(1). The Act, however, does contain limitations as to when PPCIGA is required to pay certain claims against insolvent insurers. *See Strickler v. Desai*, 571 Pa. 621, 628, 813 A.2d 650, 654 (2002) (plurality).

¶ 10 The Act further stipulates that PPCIGA is "deemed the insurer to the extent of the obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." *Bell v. Slezak*, 571 Pa. 333, 341, 812 A.2d 566, 571 (2002), *citing* 40 PA.STAT. § 991.1803(b)(2). Thus, because the Act's purpose is remedial in nature, its provisions must be liberally construed. 1 PA.CONS.STAT.ANN. § 1928(c).

¶ 11 PPCIGA's obligation to pay is set out in the Act as follows:

(b) The Association shall have the following powers and duties:

(1)(i) To be obligated to pay *covered claims* existing prior to the determination of the insolvency. . . . Such obligation shall be satisfied by paying to the claimant an amount as follows:

(A) An amount not exceeding ten thousand ($10,000.00) dollars per policy for a covered claim for the return of unearned premium.

(B) An amount not exceeding three hundred thousand ($300,000.00) dollars per claimant for all other claims.

\* \* \* \* \* \*

(4) To investigate claims brought against the association and adjust,

compromise, settle and pay covered claims to the extent of the association's obligation and deny all other claims. . . .

40 PA.STAT. § 991.1803(b)(1)(i) and (4) (emphasis added). Although the term "claimant" is not defined in the statute, the phrase "covered claim" is defined as follows:

(1) An unpaid claim, including one for unearned premiums, submitted by a claimant, which arises out of and is within the coverage and is subject to the applicable limits of an insurance policy to which this article applies issued by an insurer if such insurer becomes an insolvent insurer after the effective date of this article. . . .

\* \* \* \* \* \*

(3) The term shall not include any first-party claim by an insured whose net worth exceeds twenty-five million ($25,-000,000) dollars on December 31 of the year in which the insurer becomes an insolvent insurer: . . .

40 PA.STAT. § 991.1802, Covered Claim (1) and (3).

¶ 12 While it is not disputed that Ross had a covered claim as defined by the Act, the crux of the instant appeal is whether both TMC and Dr. Crozier, as insureds, have respective covered claims against PPCIGA under the Act. PPCIGA contends that the $300,000.00 statutory limit is expressly limited to a "per claimant" basis, not "per insured" or "per policy" as in unearned premium claims. Thus, PPCIGA argues that the Act distinguishes between the claimant and the insured, and suggests that had the legislature intended the limit for all claims be "per policy" or "per claimant," the legislature would have provided more explicit language in the Act. Appellant's Brief, at 10.

¶ 13 In support of its contention that TMC and Dr. Crozier cannot be claimants under the Act, PPCIGA relies on the Commonwealth Court's holding in *Main Line Health, Inc. v. Pennsylvania Medical Professional Liability Catastrophe Loss Fund*, 738 A.2d 66, 70 (Pa.Cmwlth.1999), *affirmed per curiam*, 566 Pa. 4, 777 A.2d 1048 (2001), for the proposition that the insured of the insolvent insurer is the insured and not a claimant for purposes of recovery under the Act. In *Main Line*, the Petitioner brought an action against PPCIGA seeking damages for PPCIGA's failure to provide separate and independent insurance coverage to physicians and professional corporations whose liability policies were issued by companies declared insolvent. Noting that under the Insurance Company Law, "a 'claimant' is a 'patient-victim' who has a claim against an insurer, *not* an insured who has a claim against the insurer," *Main Line*, 738 A.2d at 70 n. 16 (*citing Pennsylvania Osteopathic Medical Association v. Foster*, 134 Pa.Cmwlth. 368, 579 A.2d 989, 995–96 (1990), *affirmed per curiam*, 530 Pa. 198, 607 A.2d 1073 (1992)), the Commonwealth Court ultimately decided that the physician and the professional corporation were "insureds," rather than "claimants." *Id.* at 70.

¶ 14 Notwithstanding the Commonwealth Court's decision, we are unconvinced that *Main Line* is controlling in this matter. First, we recognize that Commonwealth Court decisions are not binding precedent on our Court. *See Commonwealth v. Kositi*, 880 A.2d 648, 653 n. 4 (Pa.Super.2005). As such, we are not absolutely bound to follow the Commonwealth Court's decision in *Main Line*. Second, we respectfully disagree with the Commonwealth Court's reliance upon *Foster* for the proposition that a "claimant" may not be an "insured" who has a claim

against the insurer. In *Foster*, a group of insured physicians brought suit to establish that they were not required to obtain "gap" coverage after their insurance carrier became insolvent, because the predecessor of PPCIGA, the Pennsylvania Insurance Guaranty Association ("PIGA"), was required to cover any claims made under their occurrence-based policies. *Foster*, 579 A.2d at 992. After a careful review of the Commonwealth Court's decision in *Foster*, we agree with the trial court that "the court only discussed claims made by a patient and claims made by a physician against the insurer as those terms were defined in the Health Care Services Malpractice Act [40 PA.STAT. §§ 1301.101—1301.1006 (superseded)]." Trial Court Opinion, 12/14/04, at 9. The only discussion of the term "claimant" was in regards to Section 559 of the Insurance Department Act of 1921 Act, 40 PA.STAT. § 221.59, dealing with claims by Pennsylvania residents in liquidation proceedings in another state, which the Commonwealth Court held to be inapplicable to the case at bar. *See Foster*, 579 A.2d at 993. Because the Court was not confronted with the meaning of "claimant" under the PPCIGA, the Commonwealth Court's decision in *Foster* is inapplicable to our instant review.

¶ 15 Finally, since the Commonwealth Court's decision in *Main Line*, the Pennsylvania Supreme Court in *Bell v. Slezak* has determined that the term "covered claim" refers to both first-party and third-party claimants. *See Bell*, 571 Pa. at 343–344, 812 A.2d at 572. In so holding, the Supreme Court noted that despite the Act's "disjunctive references" to "claimants or policyholders" and "the claimant or insured," the Act plainly contemplates that both first-party and third-party claimants may possess covered claims [4]:

4. In so recognizing, we eliminate the need to discuss PPCIGA's argument in which it alleg-

[T]he PPCIGA Act includes within the definition of "covered claim" claims for unearned premiums, *see* 40 P.S. § 991.1802, which obviously are reposited in insureds. Further, the statute expressly excludes from such definition "any first-party claim by an insured whose net worth exceeds [$25,000,000]," *id.*, thus suggesting, by negative implication, that insured outside this category will at least in some circumstances have covered claims. The enactment also makes explicit reference to third-party claims where differential treatment is intended. Of additional import, the cognizance of third-party claims is consistent with the broad definition of "covered claim" and the remedial purposes of the legislation.

*Id.* at 344, 812 A.2d at 572. More importantly, however, the Supreme Court in *Bell* specifically declined to follow the reasoning in *Main Line*, expressly stating in a footnote that its *"per curiam* affirmance of *Main Line* did not constitute approval of the Commonwealth Court's reasoning." *Id.*, at 344 n. 7, 812 A.2d 566, 812 A.2d at 572 n. 7. Thus, there can be no doubt that the holding in *Bell*, wherein the Court declared that both first-party and third-party claimants may possess "covered claims" for purposes of the Act, is controlling in the instant case.[5]

¶ 16 Having thus determined that TMC and Dr. Crozier are indeed claimants under the Act, we must next determine whether a covered claim exists for each policy. As previously noted, TMC had policies providing for both primary and excess liability coverage, for which PHICO would have been responsible, had it not become insolvent. Additionally, Dr. Crozier had a policy providing for primary liability coverage, for which PHICO would also have been responsible had it not become insolvent. PPCIGA does not assert that the underlying malpractice claim is not a "covered claim" under the Act. Thus, our analysis hinges on the determination of whether the unpaid claims brought by TMC and Dr. Crozier "arise[ ] out of and [are] within the coverage" of the limits of the insurance policy issued by the insolvent PHICO. *See* 40 PA.STAT. § 991.1802. We find that they do. In the underlying malpractice action, the jury's attribution of causal negligence effected TMC and Dr. Crozier's resultant obligation to make payment, for which they have yet to be indemnified as per the terms of their insurance policies. Because PHICO is now insolvent and our Supreme Court's decision in *Bell* instructs us that the Act "specifically provides the statutory basis for third-party beneficiary claims . . . as the Act specifically contemplates third-party beneficiaries as claimants thereunder," we find that TMC and Dr. Crozier

es that certain sections of the Act support a distinction between a "claimant" and an "insured." Appellant's Brief, at 11.

**5.** PPCIGA further argues that the language in *Bell*, concerning whether an insured can be a claimant, should not be controlling since it was merely dicta. Appellant's Brief, at 14. We disagree. The Supreme Court in *Bell* was squarely confronted with the issue of "whether the term ["covered claim"] refers to the insured-physician's potential claim against PPCIGA pursuant to its policy with an insolvent malpractice carrier, or to a claim

brought by the patient-plaintiff against the physician, such as the case here." *Bell*, 571 Pa. at 343, 812 A.2d at 572. While we agree with PPCIGA that the issue before the Court in that case was whether the injured patient was a claimant under the Act, it was still necessary for the Court to analyze the language of the statute to determine who exactly qualified as a claimant under the Act, since the term was undefined by the statute. Because such a determination was essential to the outcome of the case, we cannot dismiss the Court's statements as mere dicta.

have "covered claims" within the meaning of the Act. *Bell,* 571 Pa. at 345, 812 A.2d at 573. In so deciding, we are guided by the stated purpose of the Act, which purports to avoid financial loss to claimants and policyholders as a result of the insolvency of an insurer. *Id.* at 346, 812 A.2d at 574, *citing* 40 PA.STAT. § 991.1801(1). We believe this result most comports with the Act's statutory purpose.

¶ 17 Having thus far concluded that TMC and Dr. Crozier are indeed claimants possessing a covered claim for purposes of the Act, we must finally decide the novel issue of whether the statutory $300,000.00 per claim cap under the Act applies on a per policy basis—that is, whether or not the cap applies to TMC's polices for both primary and excess coverage. TMC was a claimant under both policies with PHICO. Had PHICO not been declared insolvent, it would have been obligated to pay its limits under each policy, and we can find no provision of the statute which would prevent TMC from making a covered claim under both its primary and excess policies.[6] We are not persuaded by PPCIGA's argument that the $300,000.000 limit is expressly limited to payment of that sum "per claimant for all other claims" and that

the $10,000.00 limit for unearned premiums is "per policy." Appellant's Brief, at 9–10. As noted by the trial court, it is obvious that unearned premiums claims must have a "per policy" limit because premiums are charged per policy. Trial Court Opinion, 12/14/04 at 13. Moreover, our Supreme Court's decision in *Bell v. Slezak,* as well as the Act's specific objective to avoid financial loss to claimants and policyholders as a result of the insolvency of an insurer, 40 PA.STAT. § 991.1801(1), convince us that the Legislature did not intend that all covered claims would be limited to merely one claimant. Because we have concluded that TMC and Dr. Crozier did in fact possess covered claims under the Act, and because our review of the Act has failed to find any language which distinguishes between primary and excess policies, we are persuaded to find that the statutory cap is applicable on a per policy basis.

¶ 18 Accordingly, we find that PPCIGA's statutory obligation to pay $300,000.00 per covered claim applies to both TMC's primary and excess policies, and Dr. Crozier's primary policy. Thus, PPCIGA's total liability under PHICO's policy limits amounts to $800,000.00, which

---

**6.** As our Supreme Court noted in *Bell,* "once a party is found to possess a covered claim for purposes of the Act, ... it is then the obligation and duty of PPCIGA to pay such claim unless the [Act] provides a basis for [PPCIGA] not being obligated on such claim." *Bell,* 571 Pa. at 345, 812 A.2d at 573. As recognized by the trial court, the only provision on which PPCIGA may base a claim denying responsibility for payment provides for non-duplication of recovery:

Any person having a claim under an insurance policy shall be required to exhaust first his rights under such policy. For purposes of this section, a claim under an insurance policy shall include a claim under any kind of insurance, *whether it is a first party claim* or a third party claim, *and shall include, without limitation,* accident

and health insurance, workers compensation, Blue Cross and Blue Shield and *all other coverages except for policies of an insolvent insurer.* Any amount payable on a covered claim under this Act shall be reduced by the amount of any recovery under other insurance.

Trial Court Opinion, 12/14/04, at 12, citing 40 PA.STAT. § 991.1817[(a)]. We do not find, however, that this provision relieves PPCIGA from its obligation to pay under the excess policy. We agree with the trial court's conclusion that because "policies of an insolvent insurer are excluded from the definition of 'a claim under an insurance policy', the excess policy is not within the non-duplication of recovery provisions", and thus PPCIGA remains obliged to pay the covered claim under the excess policy as well.

includes $300,000.00 for TMC's primary policy, $300,000.00 for TMC's excess policy, and $200,000.00 for Dr. Crozier's primary policy.

¶ 19 Order affirmed. Jurisdiction relinquished.